Thomas Brent ARNOLD, Appellant,

v.

STATE of Texas, Appellee.

No. 05–98–01361–CR.

Court of Appeals of Texas,
Dallas.

June 27, 2001.

Discretionary Review Denied
Jan. 16, 2002.

Lawrence B. Mitchell, Dallas, for Appellant.

John C. Vance, Criminal Dist. Atty., William T. (Bill) Hill, Jr., Lisa L. Braxton Smith, Asst. Dist. Atty., Dallas, for State.

Before Justices JAMES, BRIDGES, and CAMPBELL.[1]

## OPINION

CHARLES F. CAMPBELL, Justice (Assigned).

Thomas Brent Arnold appeals his conviction for tampering with a witness. *See* TEX. PEN.CODE ANN. § 36.05(a)(3) (Vernon Supp.2001). After a jury verdict of guilty, the trial court assessed punishment at two years' confinement in the Texas Department of Criminal Justice, State Jail Division, suspended imposition of the sentence and placed appellant on community supervision for a term of five years, and assessed a $10,000 fine. Appellant brings two points of error, claiming the evidence is legally insufficient to support the verdict and he was denied effective assistance of counsel because the court limited his attorney's closing arguments. Appellant's two points of error are essentially intertwined to the extent that if he fails to prevail on point one, he will also not prevail on point two. We affirm.

## Facts

Because there is a challenge to the legal sufficiency of the evidence, a summary of the facts is necessary. Viewed in a light most favorable to the verdict, the facts show that appellant was an attorney during the period of the events described. Amber Gatcomb, a former dancer at a "gentleman's club," worked for appellant's law firm. In March 1996, a Dallas County grand jury indicted Dallas Cowboys football player Michael Irvin for possession of cocaine. On June 19, 1996, an investigator for the Dallas County District Attorney's office interviewed Gatcomb as a possible State's witness for Irvin's trial. The investigator advised appellant that Gatcomb would probably be called to testify against Irvin. With appellant's assistance, Gatcomb left town, and she could not be located by the District Attorney's office prior to the trial date set for Irvin's case. On July 5, 1996, the trial court issued a subpoena for Gatcomb's appearance in Irvin's trial.

1. The Honorable Charles F. Campbell, Former Justice, Texas Court of Criminal Appeals, sitting by assignment.

On July 16, 1996, the trial court accepted Irvin's guilty plea, deferred adjudication of his guilt, and placed him on community supervision. A few days later Gatcomb returned to Dallas.

At trial, Gatcomb testified against appellant under a grant of immunity from the District Attorney's office. According to Gatcomb, appellant wanted her to leave town to avoid adverse consequences appellant's association with Gatcomb would have on his law practice and marriage. Gatcomb also testified that appellant said Irvin would have her killed if she testified and that Gatcomb could avoid being served with a subpoena to testify if she were more than a hundred miles outside of Dallas. Appellant paid Gatcomb's travel and living expenses to leave Dallas and instructed her not to inform anyone of her location. When the Irvin trial was over, appellant called Gatcomb and wired her money to return to Dallas.

### Legal Sufficiency of Evidence

In his first point of error, appellant contends the evidence is legally insufficient to support the jury verdict. Specifically, he contends there is no evidence he induced Gatcomb to elude an *existing* subpoena, and he argues it was legally impossible for him to have committed this crime before legal process was issued for Gatcomb on July 5, 1996.[2] Although he concedes there is some evidence he provided assistance to Gatcomb after July 5, appellant argues the only evidence he offered cash payments, continued employment, or payment of living expenses to Gatcomb, as alleged in the indictment, occurred before a subpoena was issued. Appellant also argues there is no evidence he knew legal process had been issued for Gatcomb's testimony. Although appellant couches his argument in

terms of the concept of legal impossibility, the crux of his complaint is that section 36.05(a)(3) of the penal code should be interpreted in such a manner that a person is not criminally liable for witness tampering unless the prosecution proves the acts alleged to constitute tampering occurred after the issuance of legal process summoning a witness to testify. His argument in reality, then, necessitates a statutory construction analysis and a historical overview of the statute.

■ The State argues the evidence is sufficient because the existence of legal process was not an element of the charged offense. Moreover, the State contends legal impossibility is not a recognized defense to the crime of witness tampering. In the alternative, the State asserts there is sufficient evidence of appellant's conduct after the issuance of the subpoena to support this conviction.

### Statutory Construction

■ We will review section 36.05(a)(3) to determine what the State was required to prove to sustain a verdict of guilt. When we interpret statutes, we try to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). We interpret a statute in accordance with the plain meaning of its words unless the words are ambiguous or the plain meaning leads to absurd results. *Mosley v. State*, 983 S.W.2d 249, 256 (Tex.Crim.App.1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Boykin*, 818 S.W.2d at 785. If a statute may reasonably be interpreted in two different ways, a court may consider the consequences of differing interpretations in deciding which interpretation to

---

2. Although the penal code provides no definition of "legal process," the parties agree that, in this case, legal process was the subpoena issued for Gatcomb on July 5, 1996.

adopt. *Muniz v. State,* 851 S.W.2d 238, 244 (Tex.Crim.App.1993). Moreover, if one reasonable interpretation of a statute yields absurd results and another interpretation yields no such absurdities, the latter interpretation should be preferred. *Id.*

## History of the Statute

The pertinent portion of the witness tampering statute has remained substantially unchanged since it was enacted as a witness bribery statute in 1860.[3] Under the original witness bribery statute, if the accused was indicted for offering a bribe to a witness *to disobey* a subpoena or other legal process, the indictment was required to allege the issuance of a subpoena or other legal process; but, if the bribe was offered to induce a witness *to avoid* the subpoena or other legal process, it was not necessary for the indictment to allege the issuance of a subpoena or other process. *See Scoggins v. State,* 18 Tex. Ct.App. 298, 1885 WL 6815 (1885); *see also Wheatley v. State,* 132 Tex.Crim. 498, 499, 105 S.W.2d 668, 669 (1937) (discussing same statute, then found at article 175 in the Texas Penal Code of 1925); *Pond v. State,* 116 Tex.Crim. 54, 57, 32 S.W.2d 855, 857 (1930) (same). When discussing its rationale for interpreting the witness bribery statute to exclude the existence of a subpoena as an essential element of the case, the Texas Supreme Court stated:

> The reason of the law and the language of the code alike negative the idea that a witness can be bribed to secrete himself or leave the country, and that the offending party can do this with impunity, because the indictment was not previously found, or a subpoena or other process to a witness had not then issued; were it so, there would be in numerous cases very little use in presenting the one or in issuing the other, and the stream of justice could and would be obstructed and corrupted with impunity almost at its source.

*Jackson v. State,* 43 Tex. 422, 424, 1875 WL 7567 (1875). The Texas Court of Criminal Appeals later relied on this interpretation when applying the corruption of justice rationale in the interpretation of another bribery statute:

> 'The gist of the offense,' says Mr. Bishop (2 Bishop's Crim. Law, § 86), 'seems to be the tendency of the bribe to prevent justice in any of the governmental departments—executive, legislative, or judicial.' So in *Walsh v. People,* 65 Ill. 58, 60, 16 Am. Rep. 569, 1872 WL 8368, in holding that an unsuccessful attempt to bribe is criminal, the court say[s]: 'The reason of the law is plain. The offer is a sore temptation to the weak or depraved. It tends to corrupt, and, as the law abhors the least tendency to corruption, it punishes the act which is calculated to debase and which may affect prejudicially the morals of the community.' ... the [S]tate must guard against the tendency to corrupt as well as against actual corruption, both being alike dangerous and injurious to the community at large. Therefore an indictment for attempting to bribe a township trustee to appoint a certain person as school teacher need not allege that there was a vacancy. *Shircliff v. State,*

---

**3.** Article 310a of the early penal code in Texas proscribed bribery of a witness. That article provided:

> If any person shall bribe, or offer to bribe, any witness in any case, either civil or criminal, to disobey a subpoena or other legal process, or to avoid the service of same by secreting himself, or by any other means, he shall be punished by confinement in the penitentiary not less than two nor more than five years.

Act of Feb. 11, 1860, vol. 17, part 1, *reprinted in* Paschal's Digest of the Laws of Texas from 1754 to 1873 at art.1934, p. 422.

96 Ind. 369, 1884 WL 5364.... So one may be convicted of attempting to bribe a person to avoid the service of a subpoena, although the indictment alleges neither the existence, issuance, nor service of the subpoena. *Scoggins v. State,* 18 Tex.App. 298, 1885 WL 6815. For the same reason it is also bribery, though the act requested as the price of the bribe be not properly within the official power of the officer approached.... At common law an offer of a bribe to a judge to decide a case not pending, but to be instituted afterwards before him, but which was never actually commenced, is indictable. *See People v. Markham,* 64 Cal. 157, 30 Pac. 620, 49 Am. Rep. 700. All the reasons of the rule here prevail. The tendency to corrupt justice is present at the time of the offer, and the offense is then complete. *Davis v. State,* 70 Tex.Crim. 524, 528, 158 S.W. 288, 289 (1913).

The current and applicable version of the witness tampering statute, section 36.05(a)(3), remains part of the Bribery and Corrupt Influence chapter of the penal code and, like the bribery statute, has been interpreted broadly to prohibit corruption of the judicial process. *See Navarro v. State,* 810 S.W.2d 432, 437 (Tex.App.—San Antonio 1991, pet. ref'd) (offense of tampering with witness was complete when appellant offered benefit to witness in manner calculated to cause false testimony). Moreover, in the witness tampering statute, the legislature expanded the pro-

tection of the judicial process by prohibiting improper influence of both witnesses and *prospective* witnesses.[4] *Cf. Morrow v. State,* 862 S.W.2d 612, 614–15 (Tex.Crim. App.1993) (when interpreting retaliation statute, also in Bribery and Corrupt Influence chapter of penal code, court of criminal appeals recognized legislative intent to encourage citizens to perform vital public duty as witnesses and declined to adopt construction that would create gap among categories of persons intended to be covered).

## Other Jurisdictions

Federal and other state jurisdictions, as well as one of our sister courts in Texas, have emphasized the "intent" aspect of the commission of bribery and corrupt influence crimes, rather than the vehicle employed by the accused to accomplish these public corruption crimes or the process or proceeding generally required in these statutes. *See Catrino v. United States,* 176 F.2d 884, 887 (9th Cir.1949) (any corrupt endeavor to influence, intimidate, or impede any party or witness, whether successful or not, constitutes obstruction of justice prohibited by statute); *see also United States v. Frankhauser,* 80 F.3d 641, 651–52 (1st Cir.1996) (upholding conviction of defendant who corruptly persuaded witness to destroy or conceal evidence when defendant expected federal grand jury investigation or trial in foreseeable future and intended to make items unavailable for use in such proceeding); *United States v. Shively,* 927 F.2d 804,

---

4. Section 36.05. of the penal code provides:
 (a) A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding or coerces a witness or prospective witness in an official proceeding:
 (1) to testify falsely;
 (2) to withhold any testimony, information, document, or thing;

 (3) to elude legal process summoning him to testify or supply evidence;
 (4) to absent himself from an official proceeding to which he has been legally summoned; or
 (5) to abstain from, discontinue, or delay the prosecution of another.

TEX. PEN.CODE ANN. § 36.05 (Vernon Supp. 2001).

812–13 (5th Cir.1991) (federal witness tampering statute, 18 U.S.C. § 1512, requires proof of intent to affect testimony at federal proceeding that is ongoing or scheduled to be commenced in the future);[5] *United States v. Griffin,* 463 F.2d 177, 179 (10th Cir.1972) (witness who gave information to government agent about offense but had not yet testified in court was "witness" within statute prohibiting intimidating witness in federal proceeding); *Stein v. United States,* 337 F.2d 14, 21 (9th Cir.1964) (one whom defendant knew was probable witness before Senate committee and who intended to testify was "witness," although not under subpoena when defendant gave him false story to tell when and if he testified, for purposes of prosecutions for subornation of perjury and corruptly influencing witness to give false and perjurious information to Senate committee investigators); *State v. Ard,* 876 S.W.2d 743, 745 (Mo.App.1994) (wife, who was advised husband arrested for offense arising out of sexual assault, who then called daughter from sheriff's office and made threats for which she was charged, was properly convicted of tampering with witness where it was fair inference that official proceeding in form of criminal charge was pending against husband, and wife knew daughter might be called to testify); *Commonwealth v. Fontana,* 265 Pa.Super. 387, 401 A.2d 1361, 1364 (1979), *rev'd on other grounds,* 490 Pa. 7, 415 A.2d 4 (1980) (court affirmed witness tampering conviction of contractor who allegedly attempted to influence testimony of former employee involved in contractor's receipt of stolen machinery, notwithstanding that at time of alleged tampering, employee had not yet been subpoenaed to appear nor informally questioned in connection with any judicial proceeding ongoing or pending); *Solomon v. State,* 830 S.W.2d 636, 637 (Tex.App.— Texarkana 1992, pet. ref'd) (evidence that defendant, charged with theft, anticipated woman would be prospective witness against him and threatened to kill her if she testified was sufficient to establish she was a prospective witness and to sustain defendant's conviction of retaliation, even though no trial had been set on theft charge against him and woman had not been notified by authorities that she would be witness).

■ Even though a number of these precedents interpreted bribery, retaliation, or intimidation statutes rather than witness tampering statutes, the gravamen of all of these laws is the same—to insure the sanctity of our courts and our criminal justice process. We find, based on these persuasive precedents and a plain reading of our statute, that the more reasonable interpretation of our statute, and one which furthers the legislative intent of the statute, is that the State is not required to prove the existence of a subpoena to satisfy the "eluding legal process" component of section 36.05(a)(3). Nor is the State even required to prove an accused had actual knowledge of the existence of a subpoena or other legal process, if any was extant. As long as the State proves, circumstantially or otherwise, that the accused believed a subpoena or other legal process was extant or imminent, then

---

5. We note that the federal statute specifically states that an official proceeding need not be pending or about to be instituted at the time of the offense of tampering with a witness. *See* 18 U.S.C. § 1512(e)(1) (West 2000). Even though the Texas Penal Code does not contain this express provision, Texas courts have consistently interpreted our witness tampering statute in a manner consistent with the way Congress has written the witness tampering law for the federal courts. *See Wheatley,* 132 Tex.Crim. at 499, 105 S.W.2d at 669; *Pond,* 116 Tex.Crim. at 57, 32 S.W.2d at 857; *Scoggins,* 18 Tex. Ct.App. at 298; *Jackson,* 43 Tex. at 424; *Navarro,* 810 S.W.2d at 437.

proof of the requisite mental state is met. Our conclusion is further buttressed by the legislature's addition of the term "or prospective witness" to the term "witness" in identifying the victim of the tampering. When the legislature used the term "prospective witness," it surely intended to include factual scenarios where a person has not yet become a witness, but will in the future.

 We next address appellant's challenge to the legal sufficiency of the evidence. In conducting this review, we must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Clewis v. State*, 922 S.W.2d 126, 132 (Tex.Crim.App. 1996); *Turner v. State*, 805 S.W.2d 423, 427 (Tex.Crim.App.1991). The fact finder resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the facts. *Loera v. State*, 14 S.W.3d 464, 467 (Tex.App.—Dallas 2000, no pet.); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.—Dallas 1991, pet. ref'd).

The indictment alleged that appellant, with the intent to influence Gatcomb, a witness or prospective witness, conferred or offered her benefits or coerced her to elude legal process. The benefits alleged in the indictment were unspecified cash payments, continued employment, and payment of living expenses. The coercion alleged in the indictment was a threat that Michael Irvin might have her hurt or killed if she testified against him.

Viewed in a light most favorable to the verdict, the record contains evidence that appellant knew Gatcomb was, at the very least, a prospective witness in the Michael Irvin trial, he provided substantial benefits to Gatcomb to induce her to leave town, and he did so with the intent to influence her to elude or evade any subpoena that might be issued for her testimony. Appellant was present with Gatcomb on June 19, 1996, when the investigator for the district attorney's office interviewed her concerning her knowledge of Irvin's drug usage. Gatcomb gave the investigator her address and cell phone number so he could reach her if her testimony was needed. Appellant spoke to the investigator later, and the investigator advised appellant that Gatcomb would probably be called to testify against Irvin. Gatcomb testified she had been working for appellant at his law office for about three weeks, and she described her job as consisting of long lunches, martinis, and cocaine. Appellant wanted Gatcomb to leave town to avoid adverse consequences their association would have on his law practice and marriage. According to Gatcomb, appellant told her she could avoid being served with a subpoena to testify if she were more than a hundred miles outside of Dallas.

Appellant took Gatcomb to pack her bags, advised her not to tell anyone where she was going, kept her in a hotel until her departure was arranged, and intercepted Gatcomb's cell phone calls when the district attorney's office attempted to locate her. Appellant promised Gatcomb that her job would be secure if she left town, and he gave her four blank checks to obtain as much money as she needed for her travel and living expenses. On June 21, 1996, Gatcomb drove with a friend to Galveston, Texas. On July 8, 1996, Gatcomb returned to Dallas because she had a court date on an unrelated matter. Appellant warned her that if she went to the hearing, the district attorney's office might have a subpoena waiting for her. Pursuant to appellant's instructions, Gatcomb remained in the courthouse cafeteria while appellant entered an appearance for her in

court, brought her a pass slip to sign in the cafeteria, and obtained a continuance of her case. The next morning, appellant took Gatcomb to the airport and purchased tickets for her to leave Dallas. She flew to Houston and, after a subsequent call from appellant, to Miami, Florida. When the Irvin trial was over, appellant called Gatcomb in Miami and wired her money to return to Dallas. Significant portions of Gatcomb's testimony were corroborated by other witnesses.

We conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant knew Gatcomb was a prospective witness in the Michael Irvin trial; he offered, conferred, or agreed to confer benefits to Gatcomb in the form of money, promised continued employment, payment of living expenses, and airplane tickets; these benefits were calculated to influence Gatcomb; and he acted with the intent to influence Gatcomb to elude or evade any subpoena that was or might be issued for her testimony.[6] The evidence also shows beyond a reasonable doubt that appellant conferred benefits to Gatcomb even after the issuance of a subpoena on July 5, 1996. Appellant's first point of error is overruled.

### Effective Assistance of Counsel

■ In his second point of error, appellant contends he was denied effective assistance of counsel because the court limited his attorney's closing arguments. After both sides closed their evidence, the State made a motion in limine requesting appellant be prohibited from arguing to the jury that the State failed to prove, as an element of its case, that a subpoena had been issued at the time appellant coerced or paid Gatcomb to leave Dallas. The court granted the State's motion and ordered appellant's counsel to abstain from presenting this argument to the jury. On appeal, appellant argues that the court's limitation of his closing argument deprived him of his right to an advocate who would act as an adversary to the State's prosecution.

■ We assess whether a defendant received effective assistance of counsel according to the facts of each case. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). We evaluate the effectiveness of counsel under the two-prong standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Hernandez v. State,* 988 S.W.2d 770, 770 (Tex.Crim.App. 1999). To prevail on such a claim, a defendant must show by a preponderance of evidence that (1) his counsel's representation was deficient; and (2) the deficient performance was so serious that it prejudiced his defense. *Thompson,* 9 S.W.3d at 812; *McFarland v. State,* 928 S.W.2d 482, 500 (Tex.Crim.App.1996) (per curiam). There is prejudice to the defense when counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Castoreno*

---

6. Because we conclude the evidence is legally sufficient to support a finding that appellant offered or conferred a benefit to Gatscomb, it is unnecessary for us to determine whether the evidence is legally sufficient to support a finding that appellant coerced Gatscomb. *See* TEX.R.APP. P. 47.1. The jury was charged that "coercion" means a threat, however communicated: (1) to commit an offense; or (2) to inflict bodily injury in the future on the per-

son threatened or another. *See* TEX. PEN.CODE ANN. § 1.07(9) (Vernon 1994). Because appellant brought no point of error on this issue, we do not address whether a person can be guilty of coercing a witness by expressing his opinion that another person might kill or harm the witness, absent some evidence that the defendant exerts some control over the conduct of the person who might commit the harm.

*v. State*, 932 S.W.2d 597, 604 (Tex.App.—San Antonio 1996, pet. ref'd).

 Certainly an improper denial of jury argument may constitute a denial of the right to counsel. *Johnson v. State*, 698 S.W.2d 154, 166 (Tex.Crim.App.1985); *Riles v. State*, 595 S.W.2d 858, 861 (Tex. Crim.App.1980) (citing *Spangler v. State*, 42 Tex.Crim. 233, 61 S.W. 314 (1900)). However, improper denial of a jury argument constitutes a denial of the right to counsel only when the jury argument is one the defendant is entitled to make. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim.App.1989); *Wilbon v. State*, 961 S.W.2d 9, 11 (Tex.App.—Amarillo 1996, pet. ref'd). A defendant cannot be deprived of the effective assistance of counsel by actions of the trial court unless those actions prevented counsel from doing something he had the legal right to do. *Jackson v. State*, 992 S.W.2d 469, 476 (Tex. Crim.App.1999) (per curiam).

 The defendant in a criminal trial should be allowed to argue any defensive theory supported by the evidence admitted at trial. *Cf. Brown v. State*, 955 S.W.2d 276, 279 (Tex.Crim.App.1997) (discussing jury instructions available on affirmative defenses). Counsel may draw all reasonable inferences from the facts in evidence that are "reasonable, fair, and legitimate." *Melendez v. State*, 4 S.W.3d 437, 442 (Tex.App.—Houston [1st Dist.] 1999, no pet.), *overruled on other grounds by Small v. State*, 23 S.W.3d 549 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). However, an argument that misstates the law or is contrary to the court's charge is improper. *Melendez*, 4 S.W.3d at 442; *Grant v. State*, 738 S.W.2d 309, 311 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd). In particular, defense counsel may not make statements about the State's burden of proof that are inaccurate or misleading.

*Loar v. State*, 627 S.W.2d 399, 401 (Tex. Crim.App.1981).

Here, the court prevented appellant from arguing to the jury that the State failed to prove, as an element of its case, that a subpoena had been issued at the time appellant coerced or paid Gatcomb to leave Dallas. Because a defense counsel may not make statements about the State's burden of proof that are inaccurate or misleading, and because the existence of legal process was not an element of the case the State was required to prove, we conclude the trial court's limitation of appellant's closing argument did not deny appellant effective assistance of counsel. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.