Affirmed and Memorandum Opinion filed December 11, 2003














Affirmed and
Memorandum Opinion filed December 11, 2003.

 

 

In The

 

Fourteenth Court of Appeals

_______________

 

NO. 14-03-00412-CR

_______________

 

RAYMOND LEE
JOHNSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

___________________________________________________

 

On Appeal from
183rd District Court

Harris County, Texas

Trial Court
Cause No. 921,862

___________________________________________________

 

M E M O R A N D U M   O P I N I O
N

            Raymond Lee Johnson appeals a felony
conviction of tampering with a witness. 
In two issues, he contends the evidence is legally and factually
insufficient to support the conviction. 
We affirm.

I.  Background

            On Friday, June 7, 2002, appellant
and Andres Carlos, both Metropolitan Transit Authority (“MTA”) employees, were
involved in a workplace disturbance. 
When Carlos inquired about a tool appellant was using, appellant thought
Carlos accused him of stealing 

 class=Section2>

the
tool.  Carlos testified that appellant
grabbed him by the arm, began leading him toward a bus, stating, “I want to
whip your ass.”  Carlos removed himself
from appellant’s grip and approached another employee, Roberto Garza, so that
there would be a witness.  Appellant then
threatened, “You little shit . . . next time you accuse me I am going to whip
your ass.”  Appellant admitted he cursed
and spoke derogatorily to Carlos, but denied any physical contact.  Carlos reported the incident to his
supervisor and the MTA police were called to the scene.  Appellant was issued a citation for
misdemeanor assault by contact.

            According to Carlos, when he
returned to work the following Monday, appellant offered him $300 to “drop” the
charge.  Appellant does not dispute he
offered Carlos $300. However, he denies offering Carlos the money to dismiss
the charge.  Instead, he contends he
offered the money to compensate Carlos for any inconvenience or emotional
distress the incident may have caused.

            Subsequently, appellant had an
attorney prepare an affidavit and mutual release for Carlos’s signature.  Juan Mendoza, a co-worker, delivered these
documents to Carlos at appellant’s request.[1]  The affidavit, worded as if written by
Carlos, gave an account of the incident and stated that Carlos did not want to
prosecute the assault charge.  Carlos
refused to sign the affidavit because it was “not true”.[2]   Carlos then told Mendoza that if
certain portions were removed he would sign the affidavit because he wanted to
help appellant.  Mendoza later gave
Carlos a revised affidavit, but once again he refused to sign it because it was
still incorrect. The mutual release, which had already been signed by
appellant, also contained a provision that Carlos would not prosecute any
claims resulting from the incident. 
Carlos refused to sign it because he disagreed with its contents.

            Andrew Lynn, an MTA detective,
investigated the circumstances surrounding the status of the assault charge
because it was dismissed after no one appeared at the first setting in
municipal court.  Lynn determined
that subpoenas were sent to Carlos and Garza, but they had not received them.[3]  Carlos told Lynn appellant
had offered him $300 to “drop” the charge. 
The assault charge was refiled and the
subpoenas reissued.  A second trial
setting was pending in the assault case when the underlying charge of felony
offense of tampering with a witness was tried.

            The trial court found appellant
guilty of the offense and sentenced him to two years’ confinement in state
jail, suspended for five years, imposed a $10,000 fine, and ordered thirty
days’ jail time as a condition of community supervision.  This appeal followed.

II.  Standard of Review

            In two issues, appellant contends
the evidence is legally and factually insufficient to support his
conviction.  In a legal sufficiency
challenge, we review the evidence in the light most favorable to the verdict to
determine if any rational fact finder could have found the essential elements
of the crime beyond a reasonable doubt.  King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  We
consider all evidence presented at trial; however, we do not re-weigh the
evidence or substitute our judgment for that of the fact finder.  Id.  During a bench trial, the trial court is the
exclusive judge of the credibility of the witnesses and the weight to be given
to their testimony.  Joseph v. State, 897 S.W.2d 374, 376 (Tex. Crim.
App. 1995).  Therefore, we review the
trial court’s findings and verdict to determine whether the evidence was
sufficient to support appellant’s conviction. 
Id.

            When conducting a factual
sufficiency review, the evidence is not viewed in the light most favorable to
the verdict, and the verdict is set aside if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  Johnson
v. State, 23 S.W.3d 1, 6-7 (Tex. Crim. App. 2000).  We
determine whether a neutral review of all the evidence establishes that (1) the
proof of guilt is so obviously weak as to undermine confidence in the fact
finder’s verdict; or (2) the proof of guilt, even if sufficient standing alone,
is greatly outweighed by contrary proof. 
Id. at 11.  Although
we review the fact finder’s weighing of the evidence, and we are authorized to
disagree with the fact finder’s determination, our evaluation should not
substantially intrude upon the fact finder’s role as the sole judge of the
weight and credibility given to witness testimony.  Id. at 7.

III.  Analysis

            Appellant was convicted of violating
section 36.05(a)(5) of the Texas Penal Code which provides:

(a) A person commits an offense if, with intent to influence the
witness, he offers, confers, or agrees to confer any benefit on a witness or
prospective witness in an official proceeding or coerces a witness or
prospective witness in an official proceeding:

            . . .

            (5) to abstain from,
discontinue, or delay the prosecution of another.

Tex. Pen. Code Ann. § 36.05(a)(5) (Vernon
2003).

            The crux of appellant’s sufficiency
challenge is his lack of intent to influence a prospective witness in an
official proceeding because he believed Carlos already planned to dismiss the
charge when he offered the money.[4]  

            There is ample evidence that
appellant intended to influence Carlos to dismiss the charge.  At trial, Carlos gave the following account
of his conversation with appellant on the Monday following the incident.  After appellant apologized for the incident,
Carlos responded that it was too late, the paperwork was done and he could not
do anything about “it.”  Appellant then
asked Carlos to “drop” the charge, Carlos replied he did not “put the charge”
on appellant, and appellant asked, “How about that I give you some money to drop
the charges?”  Carlos replied he did not
need appellant’s money.  Appellant then
asked, “How about we start with $300?” 
Carlos again replied he did not need the money, suggesting appellant
give it to his family.  Appellant,
holding a blank check in his hand, stated he could make the check out to
Carlos; however, when Carlos again refused the money, appellant said he did not
“feel right” for Carlos “to do something free.” 
The trial court, as fact finder, could reasonably infer the “something
free” was dismissing the charge.  See Edwards v. State, 10 S.W.3d 699, 702
(Tex. App.—Houston [14th Dist.] 1999), pet.
dism’d, improvidently granted, 67 S.W.3d 228
(Tex. Crim. App. 2002) (per curiam)
(stating fact finder may draw reasonable inferences from the evidence as
presented within the context of the crime). 
Also, the trial court, as the trier of fact
was the exclusive judge of the credibility of Carlos’s testimony that appellant
explicitly offered money to dismiss the charge.

            Further, Carlos’s account of appellant’s
offer was confirmed by a witness at trial. 
Garza heard the conversation and confirmed Carlos’s account.  In addition, Lynn testified
Carlos told him that he was offered the money to “drop” the charge.  Carlos also told Lynn he wanted
to pursue the assault charge.  Both
Carlos and Lynn opined that appellant intended to influence Carlos to abstain
from, discontinue, or delay the pending assault prosecution.

            Contrarily, appellant contends the
money had nothing to do with the assault charge.  Although appellant admitted the charge and
the money were mentioned in the same conversation, he testified he asked Carlos
to drop the charge first, and Carlos immediately said, “yes”; appellant then
mentioned the money “more in terms of what the case would cost me in lawyer’s
fees and other fees” and also to repair hurt feelings and maintain harmony at
work.  According to appellant, Mendoza had
already told him that Carlos intended to “drop” the charge before he offered
Carlos the money.

            Mendoza testified he and Carlos are
fellow members of the League of United Latin American Citizens (“L.U.L.A.C.”),
as well as a union, and it is common for MTA employees who are members of these
organizations to resolve matters among themselves.  In fact, Mendoza testified
he tried to resolve the matter on the day appellant made the offer.  Mendoza stated he
first spoke with Carlos, who expressed his willingness to dismiss any charges
against appellant, and then relayed Carlos’s intention to appellant.  Sam Vera, another co-worker, L.U.L.A.C. and
union member, testified Carlos told him “at the beginning” he was agreeable to
settling the matter; however Vera did not know the exact date of this
conversation.

            Appellant claims the foregoing
testimony proved he did not intend to influence Carlos to dismiss the
charge.  However, the testimony of Carlos
and Garza contradicts appellant’s claim, and the trial court, as the trier of fact, could choose to believe these witnesses and
give more weight to their testimony.  See Johnson, 23 S.W.3d at 7; Joseph, 897 S.W.2d at 376.

            Further, appellant made continued
efforts to have the assault charge dismissed. 
He contacted an attorney to assist him and used Mendoza to
persuade Carlos to sign the affidavit and release.  When asked why he had these documents
prepared, appellant admitted he was concerned with keeping his job.[5]  He further testified he needed to resolve the
assault charge by either going forward to trial or having it dismissed.  Although these efforts were made after the
offer at issue, they belie appellant’s claim that he did not believe Carlos was
a prospective witness in an official proceeding when the offer was made.

            Finally, Carlos testified he
received odd, harassing phone calls during the prosecution of the assault
charge.[6]  He told Lynn he was
afraid of what appellant would do next. 
Likewise, Garza testified he felt intimidated or threatened during the
proceeding.  At one point, Garza was
mailed a copy of his mug shot from an arrest nine years before.[7]  Sam Vera’s return address was on the
envelope.  Further, Lynn testified
appellant was the only person who requested a copy of this mug shot in the
previous year.  Although there is no
direct proof appellant sent the mug shot, the trial court could reasonably
infer he had it sent.  These events
further support appellant’s intent to influence the prospective witnesses to
the assault proceeding.

            Based upon the foregoing, we find
that a rational trier of fact could have found all of
the elements of the offense beyond a reasonable doubt.  See
King, 29 S.W.3d at 562.  We further
find that the verdict was not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
 See Johnson, 23 S.W.3d at 7.  The evidence is legally and factually
sufficient to support appellant’s conviction and his issues are overruled.

 

            Accordingly, the judgment of the
trial court is affirmed.

 

                                                                        /s/        Eva M. Guzman

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed December 11, 2003.

Panel
consists of Justices Anderson, Seymore and Guzman.

Do Not
Publish — Tex. R. App. P.
47.2(b).

 

 











            [1]  Appellant could not deliver the documents himself because by then, he
had been suspended by MTA; he was later fired for engaging in workplace
violence.





            [2]  The affidavit apparently placed equal blame on Carlos for the incident.





            [3]  Carlos and Garza confirmed they never received these subpoenas. 





            [4]  Appellant also argues Carlos was not aware of any pending charge when
appellant offered the money and, therefore, was not a prospective witness in an
official proceeding.  The evidence is
conflicting on whether Carlos knew the assault charge was pending.  Nevertheless, his knowledge is immaterial. We
consider the intent element from the perspective of the accused—not the
prospective witness.  See Tex.
Pen. Code Ann. § 36.05(a) (Vernon 2003); Arnold v. State, 68 S.W.3d 93, 99100 (Tex. App.—Dallas 2001,
pet. ref’d) (considering different witness-tampering
offense—influencing a witness to elude legal process, see Tex. Pen. Code Ann.
§ 36.05(a)(3)—but holding as long as the
accused believed the legal process was extant or imminent, proof of the
requisite mental state for witness tampering is met).





            [5]  Appellant had worked for MTA for eleven years, but this was not the
first time he had been dismissed.





            [6]  Due to appellant’s objections at trial, the caller’s identity was not
established.





            [7]    Garza successfully completed
deferred adjudication following this arrest, and his record had been nullified,
to his knowledge.