# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-02-00691-CR

---

**Miguel Lujan, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. 9020327, HONORABLE FRED A. MOORE, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

A jury convicted Miguel Lujan of tampering with a witness, and the trial court assessed punishment at two years' confinement in a state jail facility. Tex. Pen. Code Ann. § 36.05(a)(5) (West 2003). Imposition of sentence was suspended for four years and Lujan was placed on community supervision. On appeal, Lujan raises issues asserting that the evidence was legally and factually insufficient to support a conviction, that section 36.05(a)(5) of the Texas Penal Code is unconstitutional, and that the trial court should have given the jury an instruction on the defense of necessity. We affirm the conviction.

### *Factual Background*

Lujan was charged with tampering with a witness for attempting to pay $4,000 to his ex-girlfriend Phyllis Hinkle and her daughter in exchange for their agreement to abstain from,

discontinue, or delay a prosecution. *Id.* At that time, Lujan was under indictment for the sexual assault of Hinkle's daughter. Lujan and Hinkle lived together from 1987 until 1995. Hinkle's daughter lived with them and, during that time, Hinkle and Lujan had two sons together. Lujan and Hinkle never married, but signed a declaration of domestic partnership. In 1995 the two dissolved the domestic partnership and Hinkle filed a petition for divorce. The petition sought half of the marital assets including the value of a duplex owned by Lujan. The court made a finding of no marriage in 1996 and Hinkle married another man soon afterward.

On April 5, 2000, Austin Police Detective Roderick Wesley interrogated Lujan regarding the abuse of Hinkle's daughter; Lujan told Wesley that he believed the allegations were made by Hinkle in an effort to get money from him. On April 14, 2000, he delivered a letter to Hinkle which formed the basis of the tampering charge. The letter, entitled "Our Kids," detailed a bevy of financial hardships that the sexual assault charges would bring to Lujan and how those hardships would be passed on to the children. The letter explained that Lujan was scheduled to pay his attorney $5,000 the following Monday and that the money would come from their sons' college fund. It further stated that the allegations made against him would cost him his job and he would be unable to provide insurance for the children or pay child support. The letter also described an incident in which Lujan had previously offered to give Hinkle's daughter $3,000 to $4,000 for a car in exchange for her taking college placement examinations. It then stated, "if we can settle this case out of court I would rather give Valerie or you or whoever the whole $4,000 that I was going to spend on a car for her anyway, instead of giving all of Elias' and Isaac's college money to the lawyers."

2

Lujan testified at trial that the purpose of the letter was not an offer to pay $4,000 in exchange for a settlement of the abuse allegations. Rather, he wrote the letter in an effort to provoke a counteroffer by Hinkle. Lujan testified that he was prepared to tape record Hinkle negotiating for more money to settle the allegations and use that recording as evidence in his defense of the sexual assault charge. After receiving the letter, however, Hinkle delivered it to Detective Wesley and the tampering charges were brought against Lujan.

*Discussion*

*Legal Insufficiency*

Lujan raises two issues concerning the legal sufficiency of the evidence. He first alleges that there was no evidence to establish that he sought to influence Hinkle to abstain from, discontinue, or delay prosecution because the statutory meaning of "prosecution" is limited to only the police investigation and not the trial. He also contends that the evidence was legally insufficient to support the theory that he possessed the specific intent to influence Hinkle to abstain from, discontinue, or delay the prosecution.

In determining the legal sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 433 U.S. 307, 324 (1979); *Griffin v. State*, 614 S.W.2d 155, 158-59 (Tex. Crim. App. 1981). The jury as trier of fact is entitled to resolve any conflicts in the evidence

3

to evaluate the credibility of witnesses, and to determine the weight to be given any particular evidence. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996).

Lujan contends in his first issue that the evidence was legally insufficient to support the conviction because the letter to Hinkle offers $4,000 in exchange for the settlement of the legal proceeding and not the "prosecution." Lujan argues that the use of the word prosecution in section 36.05(a)(5) refers only to the police investigation of a case and therefore an attempt to influence a witness to abstain from, discontinue, or delay their participation in a criminal trial does not violate the statute. He also argues that only a prosecutor can decide whether to prosecute a case and, therefore, it would be impossible to influence a witness to "abstain from, discontinue, or delay" a criminal trial. Lujan's first argument requires us to ascertain the correct interpretation of the term "prosecution" in the statute.

When we interpret a statute, we seek to effectuate the collective intent or purpose of the legislature. *Boget v. State*, 74 S.W.3d 23, 27 (Tex. Crim. App. 2002); *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We focus our attention on the literal text of the statute and attempt to discern the fair, objective meaning of the text at the time of its enactment. *Boykin*, 818 S.W.2d at 785. If the language of the statute is clear and unambiguous, the legislature must be understood to mean what it has expressed and it is not for the courts to add or subtract from the law unless an application of the statute's plain language would lead to an absurd result. *Id*. Extratextual factors such as legislative history or administrative interpretation may only be considered if the plain language of the statute would lead to absurd results or if the language is ambiguous. *Id*. at 785-86.

4

Lujan contends that a narrow definition of the term "prosecution" in section 36.05(a)(5)[1] is consistent with opinions from the court of criminal appeals and a broader interpretation of the term including the decision to go to trial would lead to an absurd result. Because the letter delivered to Hinkle sought only to influence the participation in a trial and had nothing to do with the police investigation, Lujan argues the evidence was legally insufficient to sustain a conviction.

Lujan points to several cases in support of his contention that the statute's use of the term "prosecution" should be narrowly interpreted to refer only to police investigation. He cites *Howland v. State*, arguing that "prosecution" has the same meaning as "criminal action." *See* 990 S.W.2d 274, 277 (Tex. Crim. App. 1999). He then cites language in *State v. Eaves*, holding that a "criminal action" means the whole or any part of the procedure which the law provides for "bringing offenders to justice." *See* 800 S.W.2d 220, 223 (Tex. Crim. App. 1990). Lujan concludes, based on these cases, that the term "prosecution" is limited to only the police investigation of a crime because "the police investigation is part of the machinery for bringing offenders to justice."

---

[1] Section 36.05 (a)(5) of the Texas Penal Code provides:

    (a)  A person commits an offense if, with intent to influence the witness, he offers, confers, or agrees to confer any benefit on a witness or prospective witness in an official proceeding or coerces a witness or prospective witness in an official proceeding:

* * *

    (5)  to abstain from, discontinue, or delay the prosecution of another.

Tex. Pen. Code Ann. § 36.05(a)(5) (West 2003).

Our review of the cases cited by Lujan, however, reveals a broader definition of prosecution. Although *Holland* does note that Black's Law Dictionary defines "prosecution" in part as a "criminal action," the opinion also recognizes that a prosecution encompasses a criminal trial. *See* 990 S.W.2d at 277 (criminal proceeding is broader than trial on the merits and refers to any of the many steps that may occur within a prosecution). Similarly, *Eaves* also recognizes that "criminal action" and "prosecution" have been used synonymously, but later discusses a statute which authorizes the dismissal of a prosecution where a defendant is in custody or on bail and an indictment or information is not timely presented. *See* 800 S.W.2d at 223. If *Eaves* anticipated Lujan's narrow interpretation of the term "prosecution" as limited to the police investigation, a statute authorizing dismissal of a prosecution after a defendant has been apprehended makes little sense. We also note that the relevant definition in Black's Law Dictionary describes a "prosecution" as "[a] criminal proceeding in which an accused person is tried." *Black's Law Dictionary* 1237 (7th ed. 1999). We hold that section 36.05(a)(5)'s use of the term "prosecution" encompasses a criminal trial.

Furthermore, we do not agree with Lujan's contention that a broader interpretation of the term "prosecution" would result in the application of section 36.05(a)(5) criminalizing an impossible act. Although a witness may not control the charging decisions of a prosecutor,[2] section 36.05(a)(5) does not require that the witness actually abstain from, discontinue, or delay a

___

[2] "A crime victim is neither an agent of the State nor servant of the State, but simply a complaining witness who has absolutely no control over when and how the case is brought and developed by the State." *Logan v. State*, 71 S.W.3d 865, 868 (Tex. App.—Fort Worth 2002, pet. ref'd).

6

prosecution. Rather, the statute criminalizes a person's attempt to influence a witness, independent of whether the witness actually alters the prosecution. An attempt to improperly influence a witness is certainly possible and the prohibition of such conduct is consistent with the recognized purposes of the statute to prohibit the corruption of the judicial process. *See Arnold v. State*, 68 S.W.3d 93, 98 (Tex. App.—Dallas 2001, pet. ref'd). Because we find that section 36.05(a)(5) does not criminalize an impossible act and its prohibition against improperly influencing witnesses extends to the participation in a criminal trial, we overrule Lujan's first legal sufficiency issue.

Lujan also contends that the evidence presented at his trial was legally insufficient to find a specific intent to influence a witness to abstain from, discontinue, or delay his prosecution. He argues that a reasonable inference could be made from the evidence presented at trial that he intended to provoke an inculpatory response from Hinkle rather than actually intending to influence her decision to prosecute the case. Thus, the evidence was legally insufficient to establish his specific intent beyond a reasonable doubt. In support of this argument, Lujan cites a number of decisions from various jurisdictions which hold that, when the evidence gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, a reasonable jury must entertain reasonable doubt. *See Clark v. Procunier*, 755 F.2d 394, 396 (5th Cir. 1985); *Weaver v. State*, 258 S.W. 171 (Tex. Crim. App. 1924); *Texas Employers Ins. Ass'n v. Goad*, 622 S.W.2d 477, 480 (Tex. App.—Tyler 1981, no writ); *Calvert v. Union Producing Co.*, 402 S.W.2d 221, 227 (Tex. Civ. App.—Austin 1966, writ ref'd n.r.e.). These cases deal with scenarios in which the facts established at trial lead to a number of inferences as to the conduct of the parties. *See Texas Employers Ins.*, 622 S.W.2d at 480 (a number of inferences can be drawn from single fact situation).

7

In *Clark*, for example, the evidence was found insufficient to support a burglary conviction. 755 F.2d at 396. The evidence at trial established that items taken from a store's unlocked safe were found in Clark's wallet sometime after the burglary of a building. *Id*. at 395. The safe was found halfway outside of the building, and Clark's palm print was found on a part of the safe that was outside of the building. *Id*. The Court held that this evidence could lead to the equally probable conclusions that Clark entered the building and committed the burglary, or that he was a passerby and merely stole items out of the unlocked safe. *Id*. at 396. The court reasoned that, viewing the evidence in the light most favorable to the prosecution, the evidence was insufficient to establish a burglary beyond a reasonable doubt because one could just as reasonably infer only a theft. *Id*.

Another example of the type of evidence found to be insufficient in these cases may be found in *Cruz v. State*. *See* 629 S.W.2d 852, 860 (Tex. App.—Corpus Christi 1982, pet. ref'd). In *Cruz*, the defendant was convicted of murdering his roommate in the course of a robbery. *Id*. at 855. The evidence presented at trial included a confession in which Cruz admitted to killing his roommate in a fight at the house. Cruz was arrested in possession of his roommate's watch. *Id*. at 858. The court held that the possession of the watch, "without more, is as consistent with the fact that he killed to obtain it as with the fact that he did not." *Id*. at 859-60. Citing the equal probability of either conclusion, the court held the evidence was legally insufficient to establish a robbery. *Id*. at 860.

Lujan's case is distinguishable from the facts in the cases discussed above. In *Clark* and *Cruz*, the verdict depended on an inference based on a single ambiguous set of facts. The jury

8

in Lujan's trial, however, did not reach its verdict through a similar inference.  Instead, the jury was asked to choose whether to believe the inculpatory statements made by Lujan in the letter delivered to Hinkle or the exculpatory explanation offered by Lujan at trial.  Regardless of which statement the jury chose to believe, no inference was necessary to reach a verdict.

Lujan's case is more akin to a sufficiency challenge where the defendant has testified to self defense.  *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991).  The court of criminal appeals has explained that, although the State bears the burden of persuasion, it need not produce evidence specifically refuting a self-defense claim.  *Saxton*, 804 S.W.2d at 913.  Rather, the State must prove its case beyond a reasonable doubt.  *Id*.  Similarly, the State was not required to rebut Lujan's testimony explaining the letter, but could rely on the statements in the letter as proof.  It was solely within the jury's province to accept or reject the defensive evidence and the jury's guilty verdict was an implicit rejection of Lujan's defensive theory.  *See Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

Viewing the evidence in the light most favorable to the verdict, we find that the evidence was legally sufficient to establish that Lujan delivered a letter to Hinkle offering her payment and intending to influence her to abstain from, discontinue, or delay the prosecution of another.  *See* Tex. Pen. Code Ann. § 36.05(a)(5).  We overrule Lujan's second issue.

*Factual Sufficiency*

Lujan contends in his third issue that the evidence presented at his trial was factually insufficient to support a guilty verdict.  He argues that the State did not effectively impeach his

9

testimony providing an exculpatory explanation of the letter. He also points to the twenty-seven witnesses he presented who testified as to his truthful reputation and their opinion that he was a truthful person. In conducting a factual sufficiency review, we ask whether a neutral review of all of the evidence, both for and against the finding of guilt, demonstrates that the proof of guilt is either so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the jury's determination. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). Due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence. *Id.* at 9. We may disagree with the fact finder only when the record clearly indicates that such a step is necessary to prevent a manifest injustice. *Id.*

Viewing all of the evidence neutrally, we do not find the evidence obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *See id.* at 11. The text of the letter unmistakably offers $4,000 to Hinkle and her daughter to "settle this case out of court." This could reasonably be interpreted as an offer, made with the intent to influence Hinkle to abstain from or discontinue the prosecution of her daughter's sexual assault allegations. Although Lujan's testimony explaining the statements in the letter provides a defensive theory, the jury was entitled not to believe him. *See id.* at 7 (jury is sole judge of weight and credibility to be given to witness testimony). The testimony of the twenty-seven witnesses confirming Lujan's reputation for truthfulness could also have been reasonably discounted by the jury or even construed as evidence that Lujan would not have engaged in the deceptive scheme he described in his testimony. We do not conclude that the evidence was factually insufficient and therefore overrule Lujan's third issue.

10

*Constitutional Challenges*

Lujan raises two issues contending that section 36.05(a)(5) of the Texas Penal Code violates the United States and Texas Constitutions. He argues that the statute criminalizes an "intent to commit a legally and factually impossible act" and therefore is overly broad in violation of the due process clause and represents cruel or unusual punishment in violation of article I, section 13 of the Texas Constitution.

When reviewing the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden is on the party challenging the statute to prove it violates the constitution. *Id.*

In order to satisfy the requirements of substantive due process, a statute must bear a reasonable relation to a proper legislative purpose and be neither arbitrary nor discriminatory. *See Nebbia v. New York*, 291 U.S. 502, 537 (1934); *Lucas v. United States*, 757 S.W.2d 687, 695-96 (Tex. 1988); *Sullivan v. State*, 986 S.W.2d 708, 714 (Tex. App.—Dallas 1999, no pet.). The statutory prohibition must be rationally related to a legitimate governmental interest. *See Sullivan*, 986 S.W.2d at 714. Lujan asserts that, because it would be impossible for a witness to actually abstain from, discontinue, or delay a prosecution, the prohibition against influencing a witness does nothing to advance a legitimate governmental interest. We disagree. As we have discussed, the statute does not require the witness to actually abstain from, discontinue, or delay the prosecution, but merely criminalizes the corrupt solicitation of such action. The purpose of the statute is to prevent the corruption of the judicial process. *See Arnold*, 68 S.W.3d at 98; *cf. Morrow v. State*, 862

11

S.W.2d 612, 615 (Tex. Crim. App. 1993). Prosecuting those who attempt to avoid the law by paying off witnesses furthers that legitimate end regardless of whether the defendant's money was well spent.

Lujan also contends that section 36.05(a)(5) violates the cruel or unusual punishment provision of the Texas Constitution because it criminalizes "a guilty mind" or a "nonsensical intent." Contrary to Lujan's assertions, however, the statute does not seek to punish a "fantasy," but rather the concrete offer of money to a witness in an attempt to evade the judicial system. *See* Tex. Pen. Code Ann. § 36.05(a)(5). We do not find, and Lujan provides no authority, that the imposition of criminal sanctions for such conduct is either cruel or unusual. Because we reject Lujan's arguments that section 36.05(a)(5) violates the United States and Texas Constitutions, we overrule Lujan's fourth and fifth issues.

### *Necessity Instruction*

In his sixth issue, Lujan contends that the trial court erred in failing to instruct the jury on the necessity defense. He states that the evidence demonstrated his belief that, if he did not "settle" the sexual abuse allegations immediately, both he and his children would be harmed. Because the delivery of the letter served as a means to avoid this perceived harm, he argues that he was entitled to an instruction on the necessity defense. *See* Tex. Pen. Code Ann. § 9.22 (West 2003).

A defendant is entitled to a jury instruction on a defensive issue so long as the evidence at trial raised each element of the defense. *See Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999); *Stefanoff v. State*, 78 S.W.3d 496, 499 (Tex. App.—Austin 2002, pet. ref'd). The

credibility, source, or strength of the evidence is immaterial to our determination of whether the evidence raises a defense. *See Stefanoff*, 78 S.W.3d at 499. If the evidence is such that a rational juror could accept it as sufficient to prove a defensive element, then it is said to raise that element. *See id.* On appeal, evidence in support of a defensive issue is viewed in the light most favorable to the defense. *Id.* Because Lujan did not request an instruction on the necessity defense at trial, he must show that the omission of the instruction was error so egregious that he did not receive a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

The necessity defense absolves a defendant of criminal liability if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm; (2) the desirability and urgency of avoiding the harm clearly outweighs, according to ordinary standards of reasonableness, the harm sought to be presented by the law proscribing the conduct; and (3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear. Tex. Pen. Code Ann. § 9.22; *Young v. State*, 991 S.W.2d 835, 838 (Tex. Crim. App. 1999). The necessity defense is not available when the defendant denies the commission of the offense. *See Young*, 991 S.W.2d at 839 ("To raise necessity, Appellant must admit he committed the offense and then offer necessity as justification."); *Bowen v. State*, 117 S.W.3d 291, 295 (Tex. App.—Fort Worth 2003, pet. filed); *Ford v. State*, 112 S.W.3d 788, 793 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Viewing the evidence in the light most favorable to the defense, Lujan's entire defense was that he did not commit the crime of tampering with a witness because he lacked the specific intent to influence the witness to abstain from, discontinue, or delay the prosecution.

13

Because he denied the commission of the crime, Lujan was not entitled to an instruction on the necessity defense. *See Young*, 991 S.W.2d at 839. Furthermore, the evidence does not establish the elements of the necessity defense. Specifically, section 9.22(1) of the Texas Penal Code requires the defendant to bring forward evidence that he reasonably believed that the prohibited conduct was immediately necessary to avoid imminent harm. Imminent harm contemplates a split-second decision made without time to consider the law. *Stefanoff*, 78 S.W.3d at 501. Here, Lujan testified that he drafted the three-page, single-spaced letter and hand delivered it as part of a plan he devised to tape record Hinkle's response. This deliberate scheme was not the sort of "split-second" action contemplated in section 9.22. As such, we do not conclude that Lujan was entitled to an instruction on the necessity defense. We overrule his sixth issue.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 12, 2004

Do Not Publish

14